**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI
KANSAS CITY DIVISION**

| | |
|---|---|
| In re:<br><br>BLUE SUN ST. JOE REFINING, LLC, a Missouri limited liability company,<br><br>Debtor. | Case No.  15-42231-abf11<br><br>(Proposed Lead Case)<br><br>Chapter 11 |
| In re:<br><br>BLUE SUN ENERGY, INC., a Colorado corporation,<br><br>Debtor.<br>*(Request for Joint Administration Pending)* | Case No.  15-42232-11<br><br>Chapter 11 |
| In re:<br><br>BLUE SUN BIODIESEL, LLC, a Colorado limited liability company,<br><br>Debtor.<br>*(Request for Joint Administration Pending)* | Case No. 15-42233-11<br><br>Chapter 11 |
| In re:<br><br>BLUE SUN ADVANCED FUELS, LLC, a Colorado limited liability company,<br><br>Debtor.<br>*(Request for Joint Administration Pending)* | Case No.  42234-11<br><br>Chapter 11 |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION
FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE,
(II) GRANTING LIENS AND SUPERPRIORITY CLAIMS, AND (III) SCHEDULING A
FINAL HEARING ON THE DEBTORS' MOTION TO INCUR SUCH FINANCING ON
A PERMANENT BASIS**

THIS MATTER COMES BEFORE THE COURT on motion by Blue Sun St. Joe

Refining, LLC ("Blue Sun St. Joe"),  Blue Sun Energy, Inc. ("Blue Sun Energy"), Blue Sun

Biodiesel, LLC ("Blue Sun Biodiesel"), and Blue Sun Advanced Fuels, LLC ("Blue Sun

Advanced Fuels" and together with Blue Sun St. Joe, Blue Sun Energy, and Blue Sun Biodiesel,

the "Blue Sun Debtors" or the "DIP Borrowers"), debtors and debtors-in-possession in the

above-captioned chapter 11 cases (collectively, the "Cases"), dated August 3, 2015 (the "Motion") requesting entry of an interim order (the "Order"):[1]

(1)      authorizing and approving, pursuant to sections 105, 361, 362, and 364 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the DIP Borrowers to obtain postpetition financing up to the principal amount of $1,100,000 (the "DIP Facility") pursuant to that certain Debtor-in- Possession Credit and Security Agreement (the "DIP Credit Agreement") from the John and Joann Horton Family Limited Partnership (the "DIP Lender") (A) to use cash collateral to pay expenses described in the Budget during the Interim Period and after entry of the Final DIP Order, expenses described in the Budget attached to the Final DIP Order, and (B) to pay other expenses authorized by the Bankruptcy Court in orders entered in the Chapter 11 Cases that are acceptable to the DIP Lender in its sole discretion.;

(2)      authorizing and empowering the Blue Sun Debtors to execute and enter into the Loan Documents and to perform such other and further acts as may be required in connection with the Loan Documents;

(3)      providing, pursuant to section 364(c) and (d) of the Bankruptcy Code, that the financing under the DIP Facility:

a.      has priority over any and all administrative expenses, including, without limitation, the kind specified in sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 546(c), 726, 1113, or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other consensual or non-consensual lien, levy or attachment, whether incurred in the Related Cases or any successor case, which allowed

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the DIP Credit Agreement (as defined below).

1772219.2
4962897v5/26390-0001

superpriority claims of the DIP Lender shall be payable from and have recourse to all prepetition and postpetition property of the Blue Sun Debtors, subject to Prior Permitted Liens and Carve-Out (as defined below) (the "<u>DIP Facility Superpriority Claims</u>"), and

b.      be and be deemed immediately secured by valid, binding, continuing, enforceable, fully perfected and unavoidable security interests and liens (the "<u>DIP Facility Liens</u>") in and on all prepetition and postpetition property and assets of the Blue Sun Debtors, wherever located, whether real or personal, whether tangible or intangible, and whether now existing or hereafter acquired, including proceeds, products, offspring, rents and profits thereof (the "<u>Collateral</u>"), subject only to the Carve-Out and the Permitted Prior Liens (as defined below);

(4)      pending approval at the Final Hearing (as defined below), authorizing the DIP Borrowers, pursuant to sections 363 and 364(d)(1) of the Bankruptcy Code, to borrow on a final basis under the DIP Facility up to $1,100,000 (together with interest, fees, charges and expenses payable under the DIP Facility Documents), and on an interim basis to borrow up to $500,000 through the date of the Final Hearing (as defined below) (the "<u>Interim Period</u>"), pursuant to the terms and conditions of the DIP Facility Agreement, and to use the amounts borrowed to fund the Blue Sun Debtors' working capital and other general corporate needs identified in the Budget, in accordance with the terms of the Budget, the DIP Facility Agreement and this Order; and

(5)      scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "<u>Final Hearing</u>") before this Court to consider entry of an order approving the DIP Facility and authorizing the DIP Borrowers to borrow all amounts available under the DIP Facility and use such borrowed amounts to fund the Blue Sun Debtors' working capital and other general corporate needs and pay such other amounts required or allowed to be paid pursuant to the

3

Budget, the DIP Facility Documents, this Order and any other order of this Court all on a final basis (the "Final Order"), as set forth in the Motion.

Pursuant to Bankruptcy Rule 4001(c)(1), due and sufficient notice under the circumstances of the Motion and the interim hearing on the Motion before this Court to consider entry of this Order (the "Interim Hearing") having been provided by the Blue Sun Debtors as set forth in paragraph H below, and the Interim Hearing having been held on August 4, 2015, and upon consideration of all the pleadings filed with this Court; and any objections to the relief requested in the Motion that have not been resolved are hereby overruled; and upon the record made by the Blue Sun Debtors at the Interim Hearing and the Declaration of Jerry Washburn in Support of Chapter 11 Petitions and First Day Motions, and after due deliberation and consideration and good and sufficient cause appearing therefor;

IT IS HEREBY FOUND:

A.      On July 31, 2015 (the "Petition Date"), the Blue Sun Debtors each commenced in this Court a case under chapter 11 of the Bankruptcy Code.  The Blue Sun Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.      Pursuant to an order of this Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered.  No request for the appointment of a trustee or examiner has been made in these Cases.  No committees have been appointed or designated.

C.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4

D.      Subject to the rights of any non-debtor party in interest as provided in paragraph 6 herein, the Blue Sun Debtors acknowledge, agree and stipulate that:

(i)      Pursuant to that certain Amended and Restated Secured Demand Promissory Note (the "Prepetition Secured Note") dated July 17, 2015 by and among the Blue Sun Debtors and the John and Joann Horton Family Limited Partnership (the "Prepetition Lender"), the Prepetition Lender made a loan to the Blue Sun Debtors in the amount of $3 million;

(ii)      Pursuant to the Prepetition Secured Note, the Blue Sun Debtors were, as of the Petition Date, jointly and severally indebted to the Prepetition Lender in a total amount of not less than $3 million  For purposes of this Order, the term "Prepetition Secured Indebtedness" shall mean and include, without duplication, any and all amounts owing or outstanding under the Prepetition Secured Note, and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the Prepetition Secured Note;

(iii)      Pursuant to the Prepetition Secured Note, the Blue Sun Debtors granted to and/or for the benefit of the Prepetition Lender continuing pledges, liens and security interests (the "Prepetition Lender's Liens") to secure the Prepetition Secured Indebtedness on and in substantially all of property of the Blue Sun Debtors, wherever located, whether real or personal, whether tangible or intangible, and whether now existing or hereafter acquired, including proceeds, products, offspring, rents and profits thereof (the "Prepetition Collateral");

(iv)      As of the Petition Date and immediately prior to giving effect to this Order, (a) the Prepetition Secured Note is a valid and binding agreement and obligation of the Blue Sun Debtors and is enforceable against the Blue Sun Debtors in accordance with its

5

terms, (b) the Prepetition Lender's Liens (i) constitute valid, binding, enforceable and perfected first priority security interests and liens, subject only to any properly perfected liens against such Prepetition Collateral that existed prior to the date of the Prepetition Secured Note, but only to the extent such liens are (x) valid, enforceable, non-avoidable liens and security interests that are perfected prior to the date of the Prepetition Secured Note, (y) not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (ii) are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (c) the Prepetition Secured Indebtedness constitutes the legal, valid and binding obligations of the Blue Sun Debtors, and any amounts paid at any time to the Prepetition Lender on account thereof or with respect thereto, are not subject to (x) any objection, offset, defense or counterclaim of any kind or nature, or (y) avoidance, reduction, disallowance, impairment, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law except, and (d) no claims exist against the Prepetition Lender under any contract or tort (including, without limitation, lender liability) theories of recovery or pursuant to section 105 or chapter 5 of the Bankruptcy Code; and

(v)    The Blue Sun Debtors have waived, discharged and released any right they may have to challenge any of the Prepetition Secured Indebtedness and the security for those obligations, and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against the Prepetition Lender.

E.    The Blue Sun Debtors' businesses have an immediate need to obtain the DIP Facility in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital

6

and operational, financial and general corporate needs.  The access of the Blue Sun Debtors to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Blue Sun Debtors and to the success of these Chapter 11 Cases.  Without such credit, the Blue Sun Debtors would not be able to operate their businesses and the Blue Sun Debtors' estates would be irreparably harmed.

F.      The Blue Sun Debtors are unable to obtain sufficient financing from sources other than the DIP Lenders on terms more favorable than under the DIP Facility and all the documents and instruments delivered pursuant thereto or in connection therewith (inclusive of the DIP Facility Agreement, the "DIP Facility Documents").  The Blue Sun Debtors have been unable to obtain sufficient unsecured credit solely under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  New credit is unavailable to the Blue Sun Debtors without providing the DIP Lender the DIP Facility Superpriority Claims and the DIP Facility Liens as provided herein and in the DIP Facility Documents

G.      The DIP Lender has indicated a willingness to provide financing to the Blue Sun Debtors subject to (i) the entry of this Order, (ii) the terms and conditions of the DIP Facility Documents, and (iii) findings by the Court that such postpetition financing is essential to the Blue Sun Debtors' estates, that the terms of such financing were negotiated in good faith and at arm's length, and that the DIP Facility Liens, the DIP Facility Superpriority Claims, and the other protections granted pursuant to this Order and the DIP Facility Documents will not be affected by any subsequent reversal, modification, vacatur, or amendment of this Order or any other order, as provided in section 364(e) of the Bankruptcy Code.  The DIP Lender has acted in good faith in, as applicable, negotiating, consenting to and agreeing to provide the postpetition financing arrangements contemplated by this Order

1772219.2
4962897v5/26390-0001

and the other DIP Facility Documents and the reliance of the DIP Lender on the assurances referred to above is in good faith.

H.     Overnight mail notice of the Interim Hearing and the proposed entry of this Order has been provided to (i) each of the Blue Sun Debtors' twenty (20) largest unsecured creditors, (ii) the Office of the United States Trustee for the Western District of Missouri (the "U.S. Trustee"), (iii) counsel to the official committee of unsecured creditors (the "Committee"), if appointed, (iv) counsel to the DIP Lender, (v) the Internal Revenue Service, (vi) all known parties asserting a lien against the Collateral, and (vii) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or is required to receive notice under the Bankruptcy Rules, (collectively, the "Notice Parties").   Under the exigent circumstances of the Chapter 11 Cases, the requisite notice of the Motion and the relief requested thereby and this Order has been provided in accordance with Bankruptcy Rule 4001, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, sections 102(1) and 364 of the Bankruptcy Code, and no other notice need be provided for entry of this Order.

I.     The Blue Sun Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent entry of this Order, the Blue Sun Debtors' businesses, properties and estates will be immediately and irreparably harmed.

J.     The ability of the Blue Sun Debtors to finance their respective operations and the availability to the Blue Sun Debtors of sufficient working capital and other financial and general corporate liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations, including letters of credit and credit support is in the best interests of the Blue Sun Debtors and their respective creditors and estates.  The interim financing authorized hereunder is vital to avoid immediate irreparable

8

harm to the Blue Sun Debtors' businesses, properties and estates and to allow the orderly continuation of the Blue Sun Debtors' businesses.

K.    Based upon the record presented by the Blue Sun Debtors to this Court: (i) the terms of the DIP Facility are the best available under the circumstances, reflect the Blue Sun Debtors' exercise of prudent business judgment consistent with their fiduciary duty, and are supported by reasonably equivalent value and fair consideration; and (ii) the DIP Facility has been negotiated in good faith and at arm's length among the Blue Sun Debtors and DIP Lender, and any loans, credit, letters of credit, credit support or other financial accommodations authorized by this Order shall be deemed to have been extended, issued, made, or consented to, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code.

L.    The Prepetition Lender has not opposed the terms and conditions of this Order.  The consent of the Prepetition Lender granted herein is expressly limited to the postpetition financing being provided by the DIP Lender as contemplated by this Order and the DIP Facility Documents.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.    <u>Disposition</u>.  The Motion is granted as set forth in this Order.  Any objections that have not previously been withdrawn are hereby overruled.  This Order shall immediately become effective upon its entry.

2.    <u>Authorization to Borrow</u>.  Upon execution and delivery of the DIP Facility Agreement by and among the Blue Sun Debtors and the DIP Lender, in substantially the form annexed to the Motion, and provided that the Blue Sun Debtors are not in default under the terms of this Order, the Blue Sun Debtors are authorized to borrow under the DIP Facility from the DIP Lenders up to $500,000 (together with interest, fees, charges and expenses payable under the

9

DIP Facility Documents) (the "Interim Financing"), on and subject to the terms and conditions of the DIP Facility Agreement and this Order, and to use amounts borrowed under the DIP Facility to fund the Blue Sun Debtors' working capital and other general corporate needs pending the Final Hearing in accordance with the terms of the DIP Facility Agreement and this Order.  Upon their execution and delivery, the DIP Facility Documents shall constitute legal, valid, and binding obligations of the Blue Sun Debtors party thereto, enforceable against each of the Blue Sun Debtors in accordance with their terms.  Upon the entry of the Final Order and subject to the terms and conditions of the DIP Facility Documents, the Blue Sun Debtors shall be entitled to borrow all amounts available under the DIP Facility Agreement to fund the Blue Sun Debtors' working capital and other general corporate needs and pay such other amounts required or allowed to be paid pursuant to the Budget, the DIP Facility Documents, this Order and any other orders of this Court.

3.    DIP Facility Superpriority Claims.  For all of the Obligations (as defined in the DIP facility), and any other of the Blue Sun Debtors' obligations arising under the DIP Facility Documents, the DIP Lender is granted, pursuant to section 364(c)(1) of the Bankruptcy Code, subject only to the Carve-Out, the allowed DIP Facility Superpriority Claims, which claims shall be payable from and have recourse to, in addition to the Collateral, any unencumbered prepetition or postpetition property of the Blue Sun Debtors whether now existing or hereafter acquired.   The DIP Facility Superpriority Claims shall be deemed legal, valid, binding, enforceable, and perfected claims, not subject to subordination, impairment or avoidance other than as specifically provided for herein, for all purposes in the Chapter 11 Cases and any successor case.

4.    DIP Facility Liens.  As security for the repayment of the Obligations, pursuant to sections 364(c)(2), (c)(3), and (d) of the Bankruptcy Code, the DIP Lender is hereby

10

granted (without the necessity of the execution by the Blue Sun Debtors or the filing or recordation of mortgages, security agreements, account control agreements, financing statements, or otherwise) the DIP Facility Liens.  The DIP Facility Liens are valid, binding, enforceable and fully perfected as of the date hereof, not subject to subordination, impairment or avoidance, for all purposes in the Chapter 11 Cases and any successor case.  The DIP Facility Liens granted herein shall not prime or be senior in any respects to the Permitted Prior Liens.  For purposes of this Order, Permitted Prior Liens shall mean all validly existing and properly perfected prepetition liens and security interests in the Collateral, but only to the extent that such liens are (x) valid, enforceable, non-avoidable liens and security interests that were perfected prior to the Petition Date, (y) not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

5.      Carve-Out.   Subject to the terms and conditions contained in this paragraph, the DIP Facility Liens and the DIP Facility Superpriority Claims shall be subject to the following (but only to the extent that there are not sufficient, unencumbered funds in the Blue Sun Debtors' estates to pay such amounts at the time payment is required to be made): (a) the unpaid fees of the clerk of the Bankruptcy Court and of the United States Trustee pursuant to 28 U.S.C. §§ 1930(a) and (b); and (b) the aggregate allowed unpaid fees and expenses payable under sections 330 and 331 of the Bankruptcy Code to professional persons retained pursuant to Court order by the Borrowers or any committee appointed in the Chapter 11 Cases (the "Professional Fees"), but in no event shall the Carve-out exceed $50,000.  Notwithstanding anything herein to the contrary, no Prepetition Collateral, Collateral, amounts borrowed under the DIP Facility, proceeds of any of the foregoing, or any portion of the Carve-Out shall include, apply to, or be available for any fees or expenses incurred by the Blue Sun Debtors in connection with (i) the initiation or prosecution of any claims, causes of action, adversary proceedings, or

11

other litigation against the DIP Lender, including, without limitation, challenging the amount, validity, extent, perfection, priority, characterization, or enforceability of, or asserting any defense, counterclaim, or offset to the Obligations, the DIP Facility Superpriority Claims, or the DIP Facility Liens, (ii) asserting (A) any claims or causes of action, including, without limitation, claims or actions to hinder or delay the DIP Lender's assertion or enforcement of the DIP Facility Liens, or realization of the Collateral, in any way relating to the Prepetition Secured Note, the Prepetition Secured Indebtedness, the Prepetition Lender, the DIP Lender, the DIP Facility, the DIP Facility Superpriority Claims, the DIP Facility Liens or the Obligations, or (B) any actions commenced pursuant to chapter 5 of the Bankruptcy Code by the Blue Sun Debtors against the Prepetition Lender or the DIP Lender, or (iii) the initiation or prosecution of any claims, causes of action, adversary proceedings, or other litigation against any of the DIP Lender or Prepetition Lender, by the Blue Sun Debtors, including, without limitation, challenging the amount, validity, extent, perfection, priority, or enforceability of, or asserting any defense, counterclaim, or offset to, the Prepetition Secured Indebtedness or the Obligations.  The foregoing shall not be construed as consent to the allowance of any Professional Fees and shall not affect the right of the Blue Sun Debtors, the DIP Lenders, the Prepetition Lenders, the Committee, the U.S. Trustee, or other parties in interest to object to the allowance and payment of any Professional Fees.  Payment of any portion of the Carve-Out shall not, and shall not be deemed to, (x) reduce any of the Blue Sun Debtor's obligations owed to the DIP Lender or the Prepetition Lender or (y) subordinate, modify, alter or otherwise affect any of the liens and security interests of such parties on and in the Collateral or Prepetition Collateral (or their respective claims against the Blue Sun Debtors).

6.    <u>Prepetiton Lien Investigation Rights</u>.  Notwithstanding anything herein to the contrary, including the Blue Sun Debtors' stipulations and releases herein solely as they relate to

1772219.2
4962897v5/26390-0001

the Prepetition Lender, (a) the Committee, if appointed, shall have until the later of (i) 30 days from the date of appointment of the Committee and (ii) 60 days from the entry of the Final Order, and (b) any other non-debtor party in interest (including, without limitation, any receiver, administrator or trustee appointed or elected in any of the Cases or any successor case or in any jurisdiction) shall have until 60 days from the entry of the Final Order (the applicable date, (the "Investigation Termination Date") to investigate the validity, perfection, and enforceability of the Prepetition Lender's Liens and the amount and allowability of the Prepetition Secured Indebtedness.  If the Committee (if appointed), or any non-debtor party in interest, determines that there may be a challenge by the Investigation Termination Date, upon five (5) days' written notice to the Blue Sun Debtors and the DIP Lender, such Committee (if appointed) or other non-debtor party in interest shall have only until the Investigation Termination Date to commence an adversary proceeding or contested matter (each, a "Challenge"), as required by the applicable Bankruptcy Rules, on behalf of the Blue Sun Debtors' estates setting forth the basis of any such Challenge.  In no event shall the filing of any such Challenge affect any of the rights, privileges, powers or remedies of the Prepetition Secured Lender under this Order or the Prepetition Secured Note pending a ruling on such Challenge.  If no Challenge is filed on or before the Investigation Termination Date (or such other later date as extended by the written consent of the Blue Sun Debtors and the Prepetition Secured Lender), then the agreements, acknowledgements, releases and stipulations contained in paragraph D of this Order shall be irrevocably binding on the estates, the Committee (if appointed) and all other parties in interest (including, without limitation, any receiver, administrator, or trustee appointed in any of the Chapter 11 Cases or any successor case or in any jurisdiction) without further action by any party or this Court, and the Committee and any other party in interest (including without limitation a receiver, administrator, or trustee appointed in any of the Chapter 11 Cases or any successor case or in any jurisdiction)

13

shall thereafter be forever barred from bringing any Challenge with respect to the Prepetition

Lender.  If a Challenge is timely filed on or before the Investigation Termination Date, all claims

and actions against the Prepetition Lender not expressly asserted in such Challenge shall be

deemed, immediately and without further notice, motion or application to, order of, or hearing

before, this Court, to have been forever relinquished, discharged, released and waived.  Nothing

in this Order (a) confers standing on any party to file or prosecute such Challenge or

(b) precludes the Prepetition Lender from seeking allowance of all or any portion of the

Prepetition Secured Indebtedness prior to the occurrence of the Investigation Termination Date.

7.   <u>Equities of the Case 552(b) Waiver</u>.  The "equities of the case" exception

contained in section 552(b) of the Bankruptcy Code shall be deemed waived.  Neither the DIP

Lender nor the Prepetition Lender shall be subject to the equitable doctrine of "marshaling" or

any similar doctrine with respect to the Collateral or Prepetition Collateral.

8.   <u>Liens on Avoidance Actions.</u>  Notwithstanding anything to the contrary in the

DIP Facility, the Committee, if appointed and only if it has appropriate standing, shall have until

the later of (i) 30 days from the date of appointment of the Committee and (ii) 60 days from the

entry of the Final Order, to file any complaints with this Court that assert any Avoidance Actions

(the "<u>Avoidance Action Period</u>").  The DIP Facility Liens shall include liens on any Avoidance

Actions or the proceeds thereof that are not the subject of a complaint filed by the Committee

with this Court during the Avoidance Action Period.

9.   <u>Fees and Expenses of the DIP Lender</u>.  On the Maturity Date, the Blue Sun

Debtors shall, following receipt of a written summary invoice (with a copy delivered to the U.S.

Trustee and counsel to the Committee (if appointed)), reimburse the DIP Lender for its

reasonable costs, fees (including, without limitation, reasonable attorneys' and financial

advisors' fees and expenses), charges, and expenses incurred in connection with the Chapter 11

14

Cases or under the DIP Facility, whether incurred prepetition or postpetition.  None of such

costs, fees, charges, and expenses shall be subject to Court approval or required to be maintained

in accordance with the United States Trustee Guidelines, and no recipient of any such payment

shall be required to file with respect thereto any interim or final fee application with the Court;

provided, that to the extent the Blue Sun Debtors fail to reimburse the DIP Lender for any such

fees and expenses, the applicable professionals shall be permitted to apply any amounts held in

escrow or retainer (whether obtained prior to, or, or after, the Petition Date) against such unpaid

fees and expenses without the need to file any application with the Court; provided, further, that

the Court shall have jurisdiction to determine any dispute concerning such invoices; provided,

further, that if an objection to a professional's invoice is timely received, the Blue Sun Debtors

shall only be required to pay the undisputed amount of the invoice and the Court shall have

jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve

the dispute.

10. Restrictions on the Blue Sun Debtors.  Other than the Carve-Out and the

Permitted Prior Liens, no claim or lien having a priority superior or *pari passu* with those

granted by this Order to the DIP Lender shall be granted by any Blue Sun Debtor while any

portion of the Obligations (or refinancing thereof) or the Pre-Petition Indebtedness or any

commitment under the DIP Facility, remain outstanding, without the written consent of the DIP

Lender.  Except as expressly permitted by the DIP Facility Documents and this Order, the Blue

Sun Debtors will not, at any time during the Chapter 11 Cases, grant mortgages, security

interests, or liens in the Collateral or any portion thereof pursuant to section 364(d) of the

Bankruptcy Code or otherwise.

11. Additional Perfection Measures.  Neither the DIP Lender nor the Prepetition

Lender shall be required to file financing statements, mortgages, deeds of trust, security deeds,

15

notices of lien, or similar instruments in any jurisdiction, or take any other action, to attach or perfect the security interests and liens granted under the DIP Facility Documents and this Order (including, without limitation, the taking possession of any of the Collateral, or the taking of any action to have security interests or liens noted on certificates of title or similar documents). Notwithstanding the foregoing, the DIP Lender may, in its sole discretion, file this Order or such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments, or otherwise confirm perfection of such liens, security interests, and mortgages, without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, and all such documents shall be deemed to have been filed or recorded on the Petition Date, with the priorities set forth herein.

12. <u>Access to Collateral – No Landlord's Liens</u>.   Upon approval at the Final Hearing, upon written notice to the landlord of any of the Blue Sun Debtors' leased premises that an Event of Default has occurred and is continuing under the DIP Facility Documents, the DIP Lender may enter upon any leased premises of the Blue Sun Debtors for the purpose of exercising any remedy with respect to Collateral located thereon and shall be entitled to all of the Blue Sun Debtors' rights and privileges as lessee under such lease without interference from such landlord; <u>provided</u>, that, the DIP Lender shall only pay rent of the Blue Sun Debtors that first accrues after the written notice referenced above and that is payable during the period of such occupancy by the DIP Lender, calculated on a per diem basis. Nothing herein shall require the DIP Lender to assume any lease as a condition to the rights afforded to the DIP Lender in this paragraph.

13. <u>Automatic Stay</u>.  Subject only to the provisions of the DIP Facility Agreement and without further order from this Court, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the DIP Lender,

16

upon the occurrence and during the continuance of any Event of Default, to exercise all rights and remedies provided for in the DIP Facility Documents; provided, however, that prior to the exercise of any enforcement or liquidation remedies against the Collateral, the party exercising such rights or remedies shall be required to give five (5) business days' prior written notice to the Blue Sun Debtors, counsel to the Blue Sun Debtors, counsel to the Committee (if appointed) and the U.S. Trustee; provided, however, that such notice shall not be required prior to the exercise of any right or remedy to (i) freeze funds in the Blue Sun Debtors' bank accounts, (ii) charge default rates of interest, or (iii) terminate commitments and cease funding under the DIP Facility Agreement.   Notwithstanding the occurrence of an Event of Default or termination of the commitments under the DIP Facility Agreement or anything herein to the contrary, all of the rights, remedies, benefits, and protections provided to the DIP Lender under the DIP Facility Documents and this Order shall survive the final Term (as defined in the DIP Facility Agreement) or the DIP Facility Agreement.   The Blue Sun Debtors and/or the Committee shall have the initial burden of proof at any hearing on any request by the Blue Sun Debtors and/or the Committee to re-impose or continue the automatic stay with respect to the DIP Lenders; provided, however, that the only issue to be determined at such hearing shall be whether an Event of Default has occurred and is continuing, and if an Event of Default is determined to have occurred and be continuing, the automatic stay will not be re-imposed or continue with respect to the DIP Lender.   This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this paragraph and relating to the application, re-imposition or continuance of the automatic stay with respect to the DIP Lenders.

14. Binding Effect.   The provisions of this Order shall be binding upon and inure to the benefit of the DIP Lender, the Prepetition Lender, the Blue Sun Debtors, the Committee (if appointed), and their respective successors and assigns, including any trustee hereafter appointed

1772219.2
4962897v5/26390-0001

for the estate of any of the Blue Sun Debtors, whether in these Cases or any successor case, including the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code. Such binding effect is an integral part of this Order.

15. <u>Survival</u>.  The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order (a) confirming any plan under chapter 11 of the Bankruptcy Code in any of the Chapter 11 Cases (and, to the extent not satisfied in full in cash, the Obligations shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Blue Sun Debtors having hereby waived such discharge); (b) approving any sale under section 363 of the Bankruptcy Code, (c) converting any of the Cases to a chapter 7 case unless permitted under the DIP Facility Documents, or (d) dismissing any of the Cases unless permitted under the DIP Facility Documents; and, notwithstanding the entry of any such order, the terms and provisions of this Order shall continue in full force and effect, and the DIP Facility Superpriority Claims and the DIP Facility Liens granted pursuant to this Order and/or the DIP Facility Documents shall continue in full force and effect and shall maintain their priority as provided by this Order, and the DIP Facility Documents to the maximum extent permitted by law until all of the Obligations is indefeasibly paid in full in cash.

16. <u>After-Acquired Property</u>.  Except as otherwise provided in this Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the Blue Sun Debtors after the Petition Date, including, without limitation, all Collateral pledged or otherwise granted to the DIP Lender pursuant to the DIP Facility Documents and this Order, is not and shall not be subject to any lien of any person or entity resulting from any security agreement entered into by the Blue Sun Debtors prior to the Petition Date, except to the extent that such property constitutes proceeds of property of the Blue Sun Debtors that is subject to a valid,

18

enforceable, perfected, and unavoidable lien as of the Petition Date which is not subject to subordination under section 510(c) of the Bankruptcy Code or other provision or principles of applicable law.

17. <u>Access to the Blue Sun Debtors</u>.  In accordance with the provisions of access in the  DIP Facility Documents, the Blue Sun Debtors shall permit representatives, agents, and/or employees of the DIP Lender to have reasonable access to the Blue Sun Debtors' premises and records during normal business hours (without unreasonable interference with the proper operation of the Blue Sun Debtors' businesses) and shall cooperate, consult with, and provide to such representatives, agents, and/or employees all such information as is reasonably requested.

18. <u>Authorization to Act</u>.  Each of the Blue Sun Debtors is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), and to pay interest, fees and all other amounts as provided under this Order and the DIP Facility, which may be reasonably required or necessary for the Blue Sun Debtors' full and timely performance under the DIP Facility and this Order, including, without limitation:

(a)      the execution of the DIP Facility Documents;

(b)      the modification or amendment of the DIP Facility Agreement or any other DIP Facility Documents without further order of this Court, in each case, in such form as the Blue Sun Debtors and the DIP Lender may agree in accordance with the terms of the DIP Facility Documents; <u>provided</u>, <u>however</u>, that notice of any material modification or amendment shall be provided to counsel for the Committee (if appointed) and the U.S. Trustee, each of which will have three (3) days from the date of delivery of such notice within which to object in writing; <u>provided, further</u>, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of the Court; and

19

19. <u>Insurance Policies</u>.  Upon entry of this Order, the DIP Lender shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Blue Sun Debtors which in any way relates to the Collateral.  Any insurance proceeds or other receipts from any source that relate to the Collateral shall be subject to the DIP Facility Liens and the terms of the DIP Facility Documents.

20. <u>Subsequent Reversal</u>.  If any or all of the provisions of this Order or the DIP Facility Documents are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court:  (a) such modification, vacatur, amendment, or stay shall not affect (i) the validity of any obligation of any Debtor to the DIP Lender or the Prepetition Lender that is or was incurred prior to such party receiving written notice of the effective date of such modification, vacatur, amendment, or stay (the "<u>Effective Date</u>"), or (ii) the validity, enforceability or priority of the DIP Facility Superpriority Claims and the DIP Facility Liens or other grant authorized or created by this Order and the DIP Facility Documents; (b) the Obligations pursuant to this Order and the DIP Facility Documents arising prior to the Effective Date shall be governed in all respects by the provisions of this Order in effect immediately prior to the Effective Date and the DIP Facility Documents; and (c) the validity of any financing provided or security interest granted pursuant to this Order and the DIP Facility Documents are and shall be protected by section 364(e) of the Bankruptcy Code.

21. <u>Effect of Dismissal of Cases</u>.  If the Chapter 11 Cases are dismissed, converted or substantively consolidated, then neither the entry of this Order nor the dismissal, conversion or substantive consolidation of these Chapter 11 Cases shall affect the rights of the DIP Lender and Prepetition Lender under their respective documents or this Order, and all of the respective rights and remedies thereunder of the DIP Lenders and Prepetition Lender shall remain in full force and effect as if the Chapter 11 Cases had not been dismissed, converted, or

20

substantively consolidated. If an order dismissing any of the Chapter 11 Cases is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (a) the DIP Facility Liens and DIP Facility Superpriority Claims granted to and conferred upon the DIP Lender and the protections afforded to the DIP Lender pursuant to this Order and the DIP Facility Documents shall continue in full force and effect and shall maintain their priorities as provided in this Order until all Obligations shall have been paid and satisfied in full in cash, (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing the DIP Facility Liens, Prepetition Liens and DIP Facility Superpriority Claims, and (d) any hearing on a motion to dismiss any of the Chapter 11 Cases shall require at least twenty (20) days prior notice to the DIP Lender.

22. <u>Findings of Fact and Conclusions of Law</u>.  This Order constitutes findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon the entry thereof.

23. <u>Controlling Effect of Order</u>.  To the extent any provision of this Order conflicts with any provision of the Motion, any documents executed or delivered prior to the Petition Date, or any DIP Facility Documents, the provisions of this Order shall control.

24. <u>Final Hearing.</u>  A final hearing on the Motion shall be heard before this Court on **August 18, 2015 at 9:30 a.m. (Central)** at the United States Bankruptcy Court for the Western District of Missouri, Charles Evans Whittaker Courthouse, 400 East 9th Street, Courtroom 6B, Kansas City, Missouri 64106.

25. <u>Adequate Notice.</u>  The notice given by the Blue Sun Debtors of the Interim Hearing was given in accordance with Bankruptcy Rule 4001(c)(2).  Within three (3) business days after the Court's entry of this Order, the Blue Sun Debtors shall mail copies of this Order and notice of the Final Hearing to the Notice Parties.  Any party-in-interest objecting to the relief

1772219.2
4962897v5/26390-0001

sought in the Final Order shall file a written objection with the Court (with a courtesy copy to chambers) by, and serve such objection so as to be received no later than, **August 14, 2015 at 4:00 p.m. (Central)** on the following:

(a)    **Counsel to the Blue Sun Debtors:**  Gallagher & Kennedy, P.A., 2575 East Camelback Road, Phoenix, Arizona 85016-9225 (Attn: John R. Clemency and Todd A. Burgess);

(b)    **Counsel to the Prepetition Lender and DIP Lender:** Locke Lord LLP , 111 South Wacker Drive, Chicago, Illinois  60606 (Attn: Matthew V.P. McTygue, David W. Wirt, and Aaron C. Smith) and Polsinelli PC, 900 W. 48th Place, Suite 900, Kansas City, Missouri 64112 (Attn: David D. Ferguson);

(c)    **Office of the United States Trustee for the Western District of Missouri**, 400 East 9th Street, Room 3440, Kansas City, Missouri 64106.

Dated: August 5, 2015

/s/Arthur B. Federman
The Honorable Arthur B. Federman
Chief United States Bankruptcy Judge


Agreed to by:

LENTZ CLARK DEINES, PA

/s/ Jeffrey A. Deines
Jeffrey A. Deines, MO #53531
Shane J. McCall, KS #63549
9260 Glenwood
Overland Park, KS  66212
(913) 648-0600
(913) 648-0664 Telecopier
jdeines@lcdlaw.com
smccall@lcdlaw.com
Proposed Local Counsel for the Blue Sun Debtors

1772219.2
4962897v5/26390-0001

GALLAGHER & KENNEDY, P.A.

John R. Clemency (AZ Bar No. 009646)
Todd A. Burgess (AZ Bar No. 19013)
Lindsi M. Weber (AZ Bar No. 25820)
2575 East Camelback Road
Phoenix, Arizona 85016-9225
Telephone:      (602) 530-8000
Facsimile:      (602) 530-8500
Email:          john.clemency@gknet.com
                todd.burgess@gknet.com
                lindsi.weber@gknet.com
Proposed Counsel for the Blue Sun Debtors

And:

LOCKE LORD LLP

s/ Aaron C. Smith
Locke Lord LLP
111 South Wacker Drive
Chicago, Illinois 60606-4410
(312) 443-0460 Direct
(312) 896-6460 Fax
asmith@lockelord.com
Counsel for John and Joann Horton Family Limited Partnership

POLSINELLI PC

s/ James E. Bird
James E. Bird
900 West 48th Place
Suite 900
Kansas City, MO 64112
816.360.4343
(816) 753-1536 (fax)
JBird@Polsinelli.com
Local Counsel for John and Joann Horton Family Limited Partnership

And:

OFFICE OF THE UNITED STATES TRUSTEE

By: /s/ Sherri L. Wattenbarger
SHERRI L. WATTENBARGER
 KS Bar # 16401

23

1772219.2
4962897v5/26390-0001

Trial Attorney
Office of the U.S. Trustee
400 East 9th St., Ste 3440
Kansas City, MO 64106
Telephone:  (816) 512-1940
Telecopier: (816) 512-1967
Email: sherri.wattenbarger@usdoj.gov


Attorney for Debtor to serve

1772219.2
4962897v5/26390-0001